# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Julie Dalton, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CVS Health Corporation,<br><br>Defendant. | Civil Case No.:<br><br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION AND PRELIMINARY FACTS

1. Plaintiff and the members of the putative classes are blind and visually impaired individuals who rely upon auxiliary aids and services including tactile, speech-enabled, and other accessible information and communications technology that makes visually delivered materials available to and privately and independently usable for individuals who are blind or have low vision.

2. In 2019, Defendant opened the first of its new "HealthHub" stores and announced its intention to roll-out the HealthHub store model nationally. By the end of 2021 Defendant intended to open 1,500 HealthHub stores throughout the United States. See e.g., htttps://www.businessinsider.com/cvs-health-pharmacy-healthhub-tour-photos-2019-2. Currently, there are 936 HealthHub stores in 35 states and 665 cities in the United States. See e.g., https://www.scrapehero.com/location-reports/CVS%20HealthHub-USA/

3. The following image is illustrative of Defendant's HealthHub store concept:



4.  Defendant's HealthHub stores have an increased focus on providing convenient healthcare services, and include an expanded health clinic, wellness centers, and an array of healthcare services including more chronic care management. See e.g., https://www.businessinsider.com/cvs-health-pharmacy-healthhub-tour-photos-2019-2.

5.  Among other things, HealthHub stores offer services related to the treatment of conditions including STD evaluation and treatment, HIV pre or post exposure treatment, mononucleosis, scabies, shingles, lice, ringworm, urinary tract and bladder infections, yeast infections, hepatitis C, gout, insomnia, and depression.

6.  HealthHub stores require those seeking healthcare to use a visual, touch-screen, self-service kiosk to check-in or schedule appointments, which requires the input of personal and private information related to the medical issue or issues they wish to be seen for. But Individuals who are blind or have low vision cannot independently navigate all of the functions available on the self-serve kiosk.

7.  Defendant's HealthHub self-service kiosks are not tactile and are not speech enabled and do not offer the technology necessary and available to enable blind and low

vision individuals to enter personal and private information with the same degree of independence and personal privacy afforded to those without visual impairments.

8. As a result, Plaintiff and the putative classes are forced to seek assistance from and divulge private and personal information to a sighted person in a nonconfidential setting, where other people may be walking by the kiosks and standers-by can easily overhear, if they wish to take advantage of Defendant's HealthHub self-service kiosks; an affront to privacy that Defendant's sighted customers are not subjected to.

9. As the Department of Justice recently emphasized, the Americans with Disabilities Act's federal statutory mandate to furnish technology that includes appropriate auxiliary aids is critical, especially in the health-care setting. See Statement of Interest of the United States of America, *Vargas and American Council of the Blind v. Quest Diagnostics, et. al*., 19-CV-08108 (ECF 118) (C.D. Calif., Sept. 20, 2021) (containing a thorough discussion of the obligation to provide auxiliary aids and services at self-service kiosks in the health-care setting, "where patient privacy is critical")

10. Defendant's failure to provide technology that enables blind and low vision individuals to use its HealthHub self-service kiosks independently and privately violates both the general non-discriminatory mandate of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* and, as discussed more fully below, its specific auxiliary aids and services requirement. See e.g., 28 C.F.R. § 36.303(c)(1).

11. Accessible self-service kiosks are not novel or unique. Widely available solutions and technology are available to Defendant to provide an independently accessible kiosk for its blind and low vision users, including tactile, speech-enabled options.

12. Plaintiff, in her individual capacity and also on behalf all others similarly situated, seeks the following declaratory and injunctive relief: (1) a declaration that Defendant's HealthHub self-service kiosks violate the ADA as described in this Complaint; and (2) a company-wide injunction requiring Defendant to equip or replace all such HealthHub self-service kiosks so that they are privately, independently, fully and equally accessible to blind or other vision impaired individuals. Plaintiff also seeks an award of attorney's fees and costs, nominal damages, and such other relief as the Court deems just, equitable and appropriate.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

14. Plaintiff's claims asserted in this Complaint arose in this judicial district and Defendant does substantial business in this judicial district.

15. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

16. Plaintiff Julie Dalton is and, at all times relevant hereto, was a resident of Minnesota. As described above, Plaintiff is blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

17. Defendant is a corporation organized under Delaware law, and is headquartered at One CVS Drive, Woonsocket, Rhode Island.

18. Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## ADDITIONAL FACTUAL ALLEGATIONS

19. Plaintiff has visited Defendant's stores, including Defendant's store located at 6905 York Avenue, Edina, MN multiple times and most recently in 2022. Defendant's 6905 York Avenue location is less than one mile from where the Plaintiff lives and is within the area that Plaintiff typically travels in connection with her regular activities.

20. Defendant's 6905 York Avenue, Edina, MN location is a HealthHub store.

21. Plaintiff would like to use the self-help HealthHub kiosk at Defendant's 6905 York Avenue location independently and privately, but for the reasons set forth herein, has not been able to, and is not able to.

22. Defendant's HealthHub self-service kiosks are not tactile and are not speech-enabled and do not offer the technology necessary to enable blind and low vision individuals to enter personal and private information independently and privately.

23. As a result, in order to take advantage of self-help HealthHub kiosk, Plaintiff is forced to seek assistance from and divulge private and personal information to a sighted person in a nonconfidential setting, where other people may be walking by the kiosks and standers-by can easily overhear, if she wishes to take advantage of Defendant's HealthHub self-service kiosks; an affront to privacy that Defendant's sighted customers are not subjected to.

24. Defendant's HealthHub store concept includes a "care concierge," whose job includes helping with check-in. But these care concierges have no medical qualifications. And the assistance any care concierge or other sighted individual could provide would necessarily require Plaintiff to divulge private and personal information to an unknown person, in a public setting and place where it could be easily overheard – an affront to independence and privacy that Defendant's sighted customers are not subjected to.

25. Moreover, there are times when no staff is present at Defendant's HealthHub. For example, while they are at lunch. When, as is the case for the Plaintiff here, a particular HealthHub is unstaffed because the staff are at lunch, an unaccompanied blind or low vision individual like Plaintiff is forced to either rely on and share private and personal information with a stranger, a cashier or clerk of some kind, wait for Defendant's HelathHub staff to return, or forgo the Healthhub services he or she is seeking from Defendant. Defendant's sighted customers are not subjected to these obstacles.

26. Plaintiff and other customers with visual disabilities have been and are therefore deprived of the freedom to use Defendant's HealthHub self-service kiosks privately, independently, fully and equally, as Defendant's sighted customers can.

27. Defendant could use widely available technology to afford individuals with visual disabilities the same private and independent HealthHub self-service kiosk experience it offers to its sighted customers.

28. As alleged supra, widely available solutions and technology are available to Defendant to provide an independently accessible kiosk for its blind and low vision users, including tactile, speech-enabled options.

6

29. Despite her inability to use self-help HealthHub kiosks independently and privately, Plaintiff will return to Defendant's 6905 York Avenue, Edina, MN HealthHub store from time to time because of its proximity to her home and as her needs arise. Plaintiff will also return to Defendant's 6905 York Avenue, Edina, MN HealthHub store to ascertain whether it remains in violation of the ADA.

## CLASS ALLEGATION

30. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), individually and on behalf of the following classes:

> All persons who are (a) blind or who have low-vision within the meaning of the ADA, and (b) use or will use the Defendant's HealthHub self-service kiosk in any store owned or operated by Defendant within Minnesota, and have therefore been subjected to a lack of full and equal access to its HealthHub services (the Minnesota Class); and

> All persons who are (a) blind or who have low-vision within the meaning of the ADA, and (b) use or will use HealthHub self-service kiosk in of any store owned or operated by Defendant within the United States, and have therefore been subjected to a lack of full and equal access to its HealthHub services (the National Class).

31. This action is a prototypical civil-rights action of the kind expressly contemplated for class-certification by the draftsman of Fed. R. Civ. P. 23(b)(2). The note to the 1966 amendment to Rule 23 states: "Subdivision (b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. . . Illustrative are various actions in the civil rights filed where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of

specific enumeration." See also, *Newberg on Class Actions* § 4:40 (5th ed. 2014) ("The types of civil rights cases that have often been certified as (b)(2) class actions include . . . disability discrimination actions under the Americans with Disabilities Act (ADA).").

## NUMEROSITY

32. The classes described above is so numerous that joinder of all individual members in one action would be impracticable.

33. Currently, there are 936 HealthHub stores in 35 states and 665 cities in the United States, including 8 in Minnesota. See e.g., https://www.scrapehero.com/location-reports/CVS%20HealthHub-USA/

34. According to the United States Department of Justice: "The U.S. Census Bureau's 2002 Survey of Income and Program Participation (SIPP) found that there are 51.2 million people with disabilities in the United States . . . Millions of people with disabilities regularly travel, shop, and eat out with family and friends . . . The Administration on Aging projects that by 2030 there will be more than 69 million people age 65 and older, making up approximately 20% of the total U.S. population. The large and growing market of people with disabilities has $175 billion in discretionary spending, AARP says that four million Americans turn 50 each year and that people age 50 and older spent nearly $400 billion in 2003. At age 50, adults are likely to experience age-related physical changes that may affect hearing, vision, cognition, and mobility."

35. According to the American Foundation for the Blind, an estimated 32.2 million adult Americans (or about 13% of all adult Americans) reported they either "have

trouble" seeing, even when wearing glasses or contact lenses, or that they are blind or unable to see at all.

36. According to The National Federation of the Blind, the number of non-institutionalized individuals reported to have a visual disability in the United States in 2016 is 7,675,600 -- 86,500 of whom reside in Minnesota.

37. According to the National Institutes of Health (NIH), the number of people with visual impairment or blindness in the United States is expected to double to more than 8 million by 2050, according to projections based on the most recent census data and from studies funded by the National Eye Institute, part of the National Institutes of Health. Another 16.4 million Americans are expected to have difficulty seeing due to correctable refractive errors such as myopia (nearsightedness) or hyperopia (farsightedness) that can be fixed with glasses, contacts or surgery.

38. According to the United States Center for Disease Control and Prevention (CDC), Vision disability is one of the top 10 disabilities among adults 18 years and older.

39. In addition, Plaintiff anticipates that the record evidence gathered during discovery will further demonstrate that Rule 23(a)(1) has been satisfied in this matter.

40. These facts easily permit a common-sense inference that the numerosity requirement has been met in this matter.

**TYPICALITY**

41. Plaintiff's claims are typical of the claims of the members of the classes. The claims of Plaintiff and members of the classes are all based on the same legal theory and

all arise from the same unlawful conduct. Plaintiff and the class members all have the same grievance and are all entitled to the same relief.

42. Plaintiff's interests align with the interests of the putative classes because she and each class member seek injunctive relief requiring Defendant to make changes to its existing HealthHub self-service kiosks and related policies, practices and procedures in order to ensure Defendant's HealthHub stores become and remain ADA compliant, relief that would benefit all members of the proposed classes.

## COMMON QUESTIONS OF FACT AND LAW

43. There are factual and legal issues common to Plaintiff and all class members. As explained herein, Defendant's existing HealthHub self-service kiosks violate the ADA, and Defendants policies, practices and procedures fail to ensure that its HealthHub stores furnish technology that does not discriminate against people who are blind or have low vision within the meaning of the ADA. And this Court can remedy Defendant's violation of the ADA by issuing an injunction requiring a widely available change to Defendant's HealthHub self-service kiosk devices and to its related policies, procedures and practices. Accordingly, "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2), including:

   a. Whether Defendant's HeathHub stores are places of public accommodation subject to Title III of the ADA and its implementing regulations;

   b. Whether Defendant's HealthHub self-service kiosks fail to provide individuals who are blind or have low vision with the appropriate auxiliary aids and services

necessary to ensure effective communication with individuals with disabilities in violation of Title III of the ADA and its implementing regulations;

c. Whether Defendant's policies, practices and procedures discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations; and

d. Whether technology is available to remedy the concerns of Plaintiff and putative classes.

44. Whether and to what extent Defendant's HealthHub self-service kiosks and related policies, practices and procedures are unlawful presents a common question with only one answer: Defendant's HealthHub self-service kiosks and related policies, procedures and practices either violate the ADA or they do not. If Defendant's HealthHub self-service kiosks and related policies, procedures and practices are discriminatory, then each class member is entitled to injunctive relief. On the other hand, if the HealthHub self-service kiosks and related policies, procedures and practices do not violate the ADA, then no class member is entitled to injunctive relief. Either way, this proceeding will generate a common answer, the determination of which "will resolve an issue… central to the validity of each one [of the class members'] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

## ADEQUACY OF REPRESENTATION

45. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of

the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation and who possess substantial ADA expertise.

## CAUSE OF ACTION

## VIOLATION OF TITLE III OF THE ADA

46. The allegations set forth in the previous paragraphs are incorporated by reference.

47. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

48. Specific provisions within the ADA require, inter alia, that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1).

49. The regulations set forth numerous examples of "auxiliary aids and services," including "… accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

50. The term "auxiliary aids and services" also includes the "[a]cquisition or modification of equipment or devices; and [o]ther similar services and actions." *Id*.

51. The ADA Title III regulations further require that "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.* (emphasis added)

52. The United States of America recently filed a Statement of Interest of the United States of America in *Vargas and American Council of the Blind v. Quest Diagnostics, et. al.*, 19-CV-08108 (ECF 118) (C.D. Calif., Sept. 20, 2021) containing a thorough discussion of the obligation health-care providers to provide auxiliary aids and services at self-service kiosks.

53. Among other things, the United States Statement of Interest in *Vargas and American Council of the Blind v. Quest Diagnostics, et. al* made clear that the regulations "clarify that auxiliary aids and services must be provided 'in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability' in order to be effective. *Id*. § 36.303(c)(1)(ii). The type of auxiliary aid or service necessary to ensure effective communication depends on 'the context in which the communication is taking place.' *Id*. The confidentiality of private information is important in determining what auxiliary aid or service would be appropriate, particularly in the health care context where patient privacy is critical. See id." (United States Statement of Interest in *Vargas and American Council of the Blind v. Quest Diagnostics, et. al*, at pages 7-8).

54. The House Committee on Education and Labor stated that it intended "that the types of accommodation and services provided to individuals with disabilities, under

all of the titles of this bill, should keep pace with the rapidly changing technology of the times," and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities." H.R. Rep. No. 101-485, pt. 2, at 108 (1990).

55. Similarly, the United States Department of Justice, in promulgating the rules implementing Title III in 1991, explained that it was "not possible to provide an exhaustive list [of auxiliary aids and services], and such an attempt would omit new devices that will become available with emerging technology." 28 C.F.R. pt. 36, App. C, p. 912 (discussion of § 36.303).

56. Defendant's ongoing failure to provide Plaintiff private, independent, full and equal access to its HealthHub self-service kiosks constitutes unlawful discrimination on the basis of a disability in violation of the ADA and its implementing regulations. See e.g., 42 U.S.C. § 12101 et seq.; 42 U.S.C. § 12182(a); 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(a); 28 C.F.R. § 36.303(c)(1); 28 C.F.R. pt. 36, App. C, p. 912 (discussion of § 36.303); and 28 C.F.R. § 36.303(c)(1)(ii).

57. Plaintiff and the putative classes have been, and continue to be, denied private, independent, full and equal access to Defendant's HealthHub self-service kiosks.

58. Defendant's conduct is ongoing and continuous, and Plaintiff and the putative classes has been harmed by Defendant's conduct.

59.     Unless Defendant is restrained from continuing its ongoing and continuous course of conduct, Defendant will continue to violate the ADA and will continue to discriminate against and inflict injury upon Plaintiff and the putative classes.

60.     Given that Defendant has not complied with the ADA's requirements to make its facilities fully accessible to, and independently usable by, individuals with visual disabilities, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

a.      A declaratory judgment that Defendant is in violation of the ADA and its implementing regulations;

b.      A company-wide injunction which directs Defendant to take all steps necessary to bring all of its HealthHub self-service kiosks into full compliance with the requirements set forth in the ADA, so that they are fully accessible to, and privately and independently usable by, individuals who are blind or have low vision, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its HealthHub self-service kiosks and that Defendant has adopted policies, procedures and practices that will in fact cause Defendant to remain in compliance with the law;

c.      An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.      Payment of costs of suit;

e. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including an award of monitoring attorney fees sufficient to verify Defendant's compliance are fully in compliance with the relevant requirements of the ADA and to ensure that Defendant has adopted policies, procedures and practices that will in fact cause Defendant to remain in compliance with the law;

f. Payment of nominal damages in accordance with the Supreme Court's decision in *Uzuegbunam v. Preczewski*, 141 S.Ct, 792, 799-802 (They [nominal damages] are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory."); and

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

Date: February 22, 2023

Respectfully submitted,

**THRONDSET MICHENFELDER, LLC**

*/s/ Patrick W. Michenfelder*
Patrick W. Michenfelder (#024207X)
Chad Throndset (#0261191X)
Jason Gustafson (#0403297)
Cornerstone Building
One Central Avenue West, Suite 101
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
pat@throndsetlaw.com
chad@throndsetlaw.com
jason@throndsetlaw.com

*Attorneys for Plaintiff*